**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM J. GOTTSELIG, JR. and )
ARLENE GOTTSELIG, )
            Plaintiffs, )    Civil Action No. 15-971
            )
      v. )    Magistrate Judge Robert C. Mitchell
            )
ENERGY CORPORATION OF AMERICA,)
            Defendant. )

## <u>MEMORANDUM OPINION</u>[1]

ROBERT C. MITCHELL, United States Magistrate Judge

## I.      INTRODUCTION

Presently before the Court are the following:

(1) Defendant Energy Corporation of America's ("ECA") Partial Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 5]; and

(2) Plaintiffs William J. Gottselig, Jr. and Arlene Gottselig's Motion to Remand to State Court [ECF No. 17].

The motions are fully briefed and ripe for disposition. For the reasons that follow, Plaintiffs' Motion to Remand to State Court is denied, Defendant's partial motion to dismiss is granted in part and denied in part, and the parties are ordered to show cause as to why this case should not be stayed pending the disposition of the appeal in the related class action.

## II.      BACKGROUND

This case generally arises from ECA's alleged underpayment of royalties on an oil and gas lease between ECA and Plaintiffs. The present action was removed to this Court from Greene County, Pennsylvania on July 28, 2015. Plaintiffs William J. Gottselig, Jr. and Arlene

---

[1] All parties have consented to jurisdiction before a United States Magistrate Judge; therefore the Court has the authority to decide dispositive motions, and to eventually enter final judgment. *See* 28 U.S.C. § 636, *et seq.*

Gottselig, husband and wife, are landowners in Greene County, Pennsylvania and entered into oil and gas leases with ECA's predecessors in interest and with ECA. On or about March 8, 2001, Plaintiffs entered into an oil and gas lease (the "2001 Lease") with ECA's predecessor in interest, Eagle Energy Marketing, Inc. ("Eagle"), which provided for a royalty of one-eighth of the market value of the gas produced and saved at the mouth of the well. Compl. [ECF No. 1-2] at ¶¶ 7-9. The 2001 Lease provides in pertinent part:

> 1.      That for and in the consideration of the sum of Ten Dollars ($10.00) in hand paid by Lessee the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained, Lessor does hereby grant, demise, lease and let unto Lessee, for its exclusive possession and use for the purpose of exploring and operating for producing, saving, and/or storing oil and gas, by all methods now known or hereafter discovered, of injecting gas, air, water or other fluids into any subsurface strata for the purpose of recovering, producing, and/or storing oil and gas, of using and occupying the surface, and of pooling or unitizing the subject lands with other lands for such purposes, as hereinafter more fully set out[.] . . .

> 2.      Lessee shall have and is hereby granted by Lessor, during the term of this lease, the exclusive right to enter upon the above described land to conduct geological and geophysical surveys and explorations, and to operate for, produce and save oil and gas, and to inject gas, air, water or other fluids in to the subsurface strata of said land for the recovery and production, and/or storage of oil and gas, together with the right to drill wells, recondition producing wells and redrill and use abandoned wells on said land for all such purposes.

2001 Lease [ECF No. 1-3] at ¶¶ 1-2.

Plaintiffs allege that they believed the lease only applied to the production of shallow gas rights and not gas from deeper shales such as the Marcellus and Utica shales, and that they believed that Eagle had an obligation to inform them that the 2001 Lease would not be limited to the production of their shallow gas rights but would also include development of Marcellus, Utica and other deeper shales. Compl. [ECF No. 1-2] at ¶ 7. Plaintiffs allege that their 2001

Lease expired with Eagle in 2004 because no development activity or exercise of the rights granted under the lease occurred. *Id*. at ¶ 13. Regardless, in September 2006, Plaintiffs entered in an oil and gas lease extension of the 2001 Lease. The Lease Extension provided that the parties agreed that the primary term would be extended for another period of three years or until March 2007 "and as long thereafter as oil or gas or either of them, is or can be produced from said land, subject to all of the other terms and conditions of said lease." Oil and Gas Lease Extension [ECF No. 1-3 at 22]. In April 2011, the parties entered into a lease amendment which permitted the pooling and utilization of the leased interest with other properties drilled in the shale formation. Compl. [ECF No. 1-2] at ¶¶ 19, 27.

On or about November 15, 2005, Plaintiffs entered into a second oil and gas lease (the "2005 Lease") with Eastern American Energy Corporation, a predecessor to ECA which provided for a one-eighth royalty of the net proceeds received by the lessee for oil or gas produced, saved and/or sold from the leased premises. *Id*. at ¶¶ 14-16. Plaintiffs allege they believed the lease to only involve shallow gas rights. *Id*. at ¶ 14. The 2005 Lease provides in pertinent part:

> 1.      Lessor does hereby grant, demise, lease and let unto Lessee the lands hereinafter described with the exclusive rights of conducting geological, geophysical, and other exploratory work (including core drilling), and of exploring, drilling, and operating wells for oil and gas thereon, and producing and transporting the oil and gas therein[;]
>
> . . .
>
> 3. Lessee agrees to pay Lessor a royalty equal to one-eighth $(1/8^{th})$ of the net proceeds of the oil produced, saved and sold from the premises, and to pay to Lessor from the time and while gas therefrom is marketed, as a royalty for all gas produced and marketed, including all substances contained in such gas, one-eighth of the net proceeds received by Lessee from the sale of all gas produced, saved and sold from said premises. . . .

2005 Lease [ECF No. 1-3 at 19] ¶¶ 1, 3.

Plaintiffs were also putative members of the certified class in *Pollock v. Energy Corporation of America*, Civ. A. No. 2:10-1553 (W.D.Pa.) ("*Pollock*"), who opted out of the class. Plaintiffs filed the instant action against ECA bringing a myriad of breach of contract claims generally raising the same claims as the class in *Pollock*.[2] Specifically, Plaintiffs claim that ECA breached the leases by: (1) not paying royalties on volumes of gas that were lost or unaccounted for between the gas well and the point of sale; (2) misallocating the net proceeds received on the volumes of gas sold; (3) deducting certain post-production costs from the royalties; and (4) calculating the royalties based on the incorrect price of the gas. Additionally, Plaintiffs bring the following claims not raised in the class action: (5) that ECA breached the leases by failing to inform Plaintiffs of the relationship between ECA and Eastern Marketing Corporation ("EMCO"), its marketing subsidiary, where title to the gas transferred, the deduction of expenses allegedly recovered from others and that the leases permitted the drilling of Marcellus wells; (6) an unjust enrichment claim; and also include an accounting claim.

## III.   DISCUSSION

Plaintiffs move to remand this case to state court. Additionally, ECA moves to dismiss all of the claims except for the claims certified in the preceding class action. Each motion is addressed separately.

### a.   Motion to Remand

Certain jurisdictional requirements must be met for a defendant to remove a case from state court to the federal district court. Generally, a defendant may remove a case to the federal

---

[2] Plaintiffs also include in their complaint those claims held for trial in *Pollock*: whether ECA improperly deducted marketing and transportation costs from Plaintiffs' royalties.

district court if that court would have had original jurisdiction over the matter had it been filed there in the first instance. 28 U.S.C. § 1441; *Medlin v. Boeing Vertol Co.,* 620 F.2d 957, 960 (3d Cir.1980). A district court has original jurisdiction over cases where the amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the plaintiff(s) and defendant(s). *See* 28 U.S.C. § 1332(a). Diversity jurisdiction requires that no defendant is a citizen of the same state as any plaintiff. 28 U.S.C. § 1332(a)(1). "A corporation is a citizen of the state in which it is incorporated and the state where its principal place of business or 'nerve center' is located." *Johnson v. SmithKline Beecham Corp.*, 853 F. Supp. 2d 487, 490 (E.D. Pa. 2012) *aff'd*, 724 F.3d 337 (3d Cir. 2013) (citing 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 91, 130 S. Ct. 1181, 1192, 175 L. Ed. 2d 1029 (2010)). "A corporation's 'nerve center,' usually its main headquarters, is a **single place**[,]" and is "where a corporation's officers direct, control and coordinate the corporation's activities." *Hertz*, 559 U.S. at 97 (emphasis added).

If after removal, the plaintiff moves to remand the case to state court, the "defendant has the burden of establishing the propriety of removal." *Viola v. Provident Life & Acc. Ins. Co.*, Civ. A. No. 00-1656, 2000 WL 1022894, at *1 (E.D. Pa. July 17, 2000) (citing *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)). The case may be remanded if there is a procedural defect such as lack of subject matter jurisdiction present. 28 U.S.C. § 1447(c). The removal statute must be strictly construed against removal to enforce Congressional intent to restrict federal diversity jurisdiction. *Boyer*, 913 F.2d at 111. Additionally, the removing party has the burden of proving federal jurisdiction. *Hertz*, 559 U.S. at 130. In deciding whether a case should be remanded, the district court is not limited to the allegations of the complaint, but may consider the entire record in making its decision. *Viola*, 2000 WL 1022894, at *2. With this, the

court may demand that certain jurisdictional facts be established by a preponderance of the evidence. *Hertz*, 559 U.S. at 95; *Frederico v. Home Depot*, 507 F.3d 188, 194 (3d Cir. 2007). "When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." *Id.*

It is undisputed that Plaintiffs are residents and citizens of Pennsylvania and the amount in controversy exceeds the statutory minimum. The dispute here is whether ECA is a citizen of Pennsylvania so as to divest jurisdiction from this Court. For the reasons that follow, the case was properly removed and the Court has jurisdiction over the matter because ECA is incorporated in the state of West Virginia with its principal place of business located in Denver, Colorado, and is not a Pennsylvania corporation nor does it have a principal place of business in Pennsylvania.

Plaintiffs attach as exhibits to their motion Pennsylvania Department of State website documents which purport to show an entity identified as "ECA" with a corporate identity number of 708579 which is incorporated in Pennsylvania with its principal place of business in Radnor, Delaware County, Pennsylvania. Plaintiffs also attach a document depicting Defendant ECA with a corporate identity number of 3839684 incorporated in West Virginia with its principal place of business in Denver, Colorado. Plaintiffs seemingly argue that in addition to ECA being incorporated in West Virginia and having a principal place of business in Denver, Colorado, Defendant ECA is also incorporated in and has a principal place of business in Pennsylvania. Lastly, Plaintiffs argue that ECA is a Pennsylvania corporation because it accepted service in Pennsylvania.

ECA unequivocally denies being a Pennsylvania corporation and attaches to its response an affidavit of its Vice President, George O'Malley, denying that the company identified by

Plaintiff as "ECA" corporate identity number 708579 is the Defendant ECA and also testifies that Defendant ECA is not incorporated in Pennsylvania, has no principal place of business in Pennsylvania, does not have a physical location in Radnor, Delaware County, Pennsylvania, and has no corporate relationship with the corporate entity identified as 708579 in the Pennsylvania Department of State records. Further, Mr. O'Malley testifies that the corporate identity number 3839684 is in fact the Defendant, and Plaintiffs' own exhibits show that Defendant ECA is incorporated in West Virginia with its principal place of business in Denver, Colorado.

Plaintiffs' argument that Defendant ECA is a Pennsylvania corporation fails for several reasons. First, to the extent that Plaintiffs argue that ECA is incorporated in both West Virginia and Pennsylvania, and also that it has two principal places of business, it is impossible for a business to be incorporated in more than one state or to have two principal places of business.[3] *See Hertz*, 559 U.S. at 93 ("The word place is in the singular, not the plural. The word 'principal' requires us to pick out of the 'main, prominent' or 'leading' place. . . . A corporation's 'nerve center,' usually its main headquarters, is a single place.") (citations omitted).

Next, Plaintiffs provide no evidence to rebut ECA's Vice President George O'Malley's sworn testimony that the entity identified as corporate identity number 708579 is not Defendant ECA, and the corporation identified as number 3839689 is in fact Defendant ECA. The Department of State documents reflect that ECA corporate identity number 3839689 – which ECA's Vice President indisputably testifies is Defendant ECA – is incorporated in West Virginia with its principal place of business in Colorado. A review of the detailed records on corporate

---

[3]   Plaintiffs do not raise the issue of the "nerve center" test by arguing that ECA's principal place of business is actually in Pennsylvania and not Colorado, therefore a discussion of whether ECA's nerve center is in Pennsylvania and not Colorado is unwarranted.

identity number 3839689 reflects that the president of this entity is John Mork, CEO of ECA, and names several of ECA's current officers, including Donald C. Supcoe, ECA's secretary and John M. Forbes, ECA's treasurer. The Court is not convinced that corporate identity number 708579 is in fact Defendant ECA because it simply uses the same acronym as the Defendant here. The evidence irrefutably shows that corporate identity number 3839689 is Defendant ECA, as it names several of ECA's present corporate officers. Additionally, in all cases in this Court involving Defendant ECA, it is undisputed that ECA is a West Virginia corporation with a principal place of business in Denver Colorado. *See e.g., Pollock, et al., v. Energy Corp. of Am.*, Civ. A. No. 2:10-1553 (W.D.Pa.); *Vecchio et al., v. Energy Corp. of Am.*, Civ. A. No. 2:11-1377 (W.D.Pa.). Lastly, as to Plaintiffs' argument that Defendant ECA is a Pennsylvania corporation because it accepted service in Pennsylvania, this argument is also rejected, because "[a]lleging that a corporation conducts business in a state is not the equivalent of alleging the location of the corporation's principal place of business. Many corporations conduct business in multiple states, but . . . for diversity purposes, the corporation is only a citizen of its state of incorporation and the state where it has its principal place of business." *Scott v. LTS Builders, LLC*, 2010 WL 4530153, at *2 (M.D.Pa. Nov. 2, 2010). Accordingly, Plaintiffs' motion to remand is denied.

b. Partial Motion to Dismiss

Next, because the Court has jurisdiction over this case, ECA's motion to dismiss will be considered.

To survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The reviewing court must "determine whether, under any reasonable

reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where the factual allegations of the complaint conceivably fail to raise, directly or inferentially, the material elements necessary to obtain relief under a legal theory of recovery. *Twombly*, 550 U.S. at 561 (citations omitted). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (2009) (citing *Twombly*, 550 U.S. at 555). The factual and legal elements of a claim should be separated, with the court accepting all well-pleaded facts as true and disregarding all legal conclusions. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130-31 (3d Cir. 2010). Under this standard, civil complaints "must contain more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal quotations omitted). A court in making this determination must ask "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 583 (quoting *Scheuer v. Rhoads*, 416 U.S. 232, 236 (1974) (internal quotations omitted)).

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may take into consideration "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993). Although a district court may not generally consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), it may consider documents <u>integral to or explicitly relied upon</u> in a complaint without

converting the motion to dismiss into a motion for summary judgment. *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis added). Accordingly, the Court may take into consideration the leases attached to the complaint without converting Defendant's motion into one for summary judgment, as the authenticity of those documents are undisputed and based on Plaintiffs' claims.

ECA moves to partially dismiss Plaintiffs' complaint on the grounds that this Court has already rejected many of the claims as a matter of law in the underlying class action suit in *Pollock*. Specifically, ECA moves to dismiss Plaintiffs' claims insofar as this Court has previously rejected the following: (1) the claim for royalties on volumes of gas that were lost or unaccounted for between the gas well and the point of sale; (2) the claim that ECA's method of allocating the net proceeds received on the volumes of gas sold breach the leases; (3) the claim that ECA cannot deduct post-production costs from the royalties unless those costs are specifically identified in the lease or listed in the Pennsylvania Supreme Court's decision in *Kilmer v. Elexco Land Services*, 990 A.2d 1149 (Pa. 2010); and (4) the claim that ECA calculated the royalties based on the incorrect price of gas. *See* Mot. to Dismiss [ECF No. 5] at ¶ 4. ECA also moves to dismiss two unique claims not raised in *Pollock*: (5) a breach of contract claim for ECA's failure to inform Plaintiffs of the relationship between ECA and EMCO, where title to the gas transferred, the deduction of expenses allegedly recovered from others and that the leases permitted the drilling of Marcellus wells because there is no duty under the lease or Pennsylvania law for ECA to disclose that information; and (6) the unjust enrichment claims because the action is governed by the leases that Plaintiffs entered into with ECA's predecessors in interest.

The Court will first discuss whether the two claims not raised in the related class action should be dismissed.

### i. Breach of Contract

First, Plaintiffs claim that ECA breached the leases by failing to inform Plaintiffs of certain information including the nature of the relationship between ECA and its marketing subsidiary EMCO, where title to the gas transferred, the deduction of certain expenses and that the leases permitted the drilling of deeper shales.

In order to state a claim under Pennsylvania law, a plaintiff must allege: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 255 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa.Super.Ct. 1999)). Further, the general principals of contract interpretation govern oil and gas leases. *Smith v. SteckmanRidge, LP*, 2014 WL 1278120, at *4 (W.D.Pa. March 27, 2014) (citing *T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.2d 462, 468-69 (Pa. 2006)). An oil and gas lease "must be construed in accordance with the terms of the agreement as manifestly expressed, and '[t]he accepted and plain meaning of the language used, rather than the silent intentions of the contracting parties, determines the construction to be given the agreement.'" *Dansbury v. EOG Res., Inc.*, 2014 WL 2737841, at *7 (M.D.Pa. June 13, 2014) (*T.W. Phillips Gas & Oil Co. v. Jedlicka*, 42 A.3d 261, 267 (Pa. 2012).

Here, the language of the leases in question is plain and unambiguous. The leases do not impose on ECA a duty to inform Plaintiffs of the relationship between ECA and EMCO, where title to the gas transferred, the deduction of expenses or that the leases permitted the drilling of deeper shales. Therefore, it is impossible for ECA to be held responsible for terms that it did not

contract for. Instead of pointing to a lease provision that imposes these duties, Plaintiffs point to dicta in an opinion authored by this Court in *Pollock* as to whether the "relationship between ECA and EMCO creates an oral modification of the contract." Br. in Op. to Mot. to Dismiss [ECF 22] at 6. The portion of the opinion which Plaintiffs cite concerns the long term marketing contract between ECA and its marketing affiliate, EMCO and has no bearing on any purported contractual obligation owed to the class certified in that case. It is also unclear how a contract between ECA and EMCO would create an obligation on ECA to notify Plaintiffs here of the information they seek to hold ECA responsible for. Accordingly, Plaintiffs' claims that ECA breached the lease by failing to inform them of the nature of the relationship between ECA and its marketing affiliate EMCO, where title to the gas transferred, the deduction of certain expenses and that the leases permitted the drilling of deeper shales are dismissed.[4]

### ii. Unjust Enrichment

Next, ECA moves to dismiss Plaintiffs' unjust enrichment claim. Plaintiffs allege that ECA has been unjustly enriched by failing to pay Plaintiffs "the proper amount of gas royalties and by failing to pay Plaintiffs any oil royalties[,]" by failing to adequately compensate Plaintiffs "for the loss of use of their real estate" conveyed in the leases, and by failing to pay bonuses and royalty payments allegedly provided for in the leases. Compl. [ECF No. 1-2] at ¶¶ 64-66. ECA argues that the dismissal of Plaintiffs' unjust enrichment claims are appropriate because it is undisputed that the duties of each party were set forth in the executed leases and unjust

---

[4] Whether the leases permitted the drilling of deeper shales is an issue of contract interpretation and has no bearing on whether ECA breached the leases by failing to inform Plaintiffs that it was drilling for deeper shales, as the latter is clearly not an obligation imposed by any lease entered into by the parties. It seems that Plaintiffs misunderstanding of basic contract law arise from their ambiguous and inartfully pleaded complaint which includes only two blanket claims for breach of contract and unjust enrichment, but fails to define which lease provisions have been breached or even what lease Plaintiffs seek to hold ECA accountable for.

enrichment only applies when a transaction is not otherwise governed by an express contract. Br. in Supp. of Mot. to Dismiss [ECF No. 6] at 9-11.

Under Pennsylvania law, the elements of an unjust enrichment claims "are benefits conferred on defendant by plaintiff, appreciation of such benefits by defendant, and acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 896 (Pa.Super.Ct. 2011) (internal quotation marks omitted). If a court finds that a party has been unjustly enriched, "the law implies a quasi-contract which requires the defendant to pay to plaintiff the value of the benefit conferred." *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa.Super.Ct. 2001) (citations omitted). "Pennsylvania has long ascribed to the rule that when the 'parties' relationship is based on an express written contract no unjust enrichment recovery is permitted.'" *Montanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp. 2d 504, 515 (E.D. Pa. 2012) (quoting *Novacare, Inc. v. S. Health Mgmt. Inc.,* Civ. A. No. 97–5903, 1998 WL 470142, at *1 (E.D.Pa. Aug. 11, 1998)). *See also Wilson Area Sch. Dist. v. Skepton,* 895 A.2d 1250, 1254 (Pa. 2006) ("the doctrine of unjust enrichment is inapplicable where the relationship between the parties is founded upon a written agreement or express contract"); *Schott v. Westinghouse Elec. Corp.,* 259 A.2d 443, 448 (Pa. 1969) ("[T]his Court has found the quasi-contractual doctrine of unjust enrichment inapplicable when the relationship between parties is founded on a written agreement or express contract.").

Typically, courts only allow a plaintiff to plead both a breach of contract claim and a claim for unjust enrichment "where there is some dispute as to whether a valid, enforceable written contract exists." *Montanez*, 876 F.Supp.2d at 516. However, where there is no dispute that the contract exists and is valid, "it is proper to dismiss an unjust enrichment claim at the

motion to dismiss stage." *Grudkowski v. Foremost Ins. Co.*, Civ. A. No. 3:12-1847, 2013 WL 816666, at *12 (M.D. Pa. Mar. 5, 2013) *aff'd*, 556 F.App'x 165 (3d Cir. 2014) and *aff'd*, 556 F. App'x 165 (3d Cir. 2014).  For example, in oil and gas breach of lease case where the plaintiff simultaneously alleges claims for a breach of contract and unjust enrichment, the unjust enrichment claim has survived the dismissal phase only where the oil and gas company continued to act according to the lease after the lease had expired, *Dansbury v. EOG Res., Inc.*, 2014 WL 2737841, at *13 (M.D.Pa. June 13, 2014), and where the damages stemmed from a third party who had no privity of contract with the plaintiff. *Suessenbach Family Ltd. P'ship. v. Access Midstream Partners, L.P.*, Civ. A. No. 3:14-1197, 2015 WL 1470863, at *18 (M.D.Pa. Mar. 31, 2015); *Baker v. Family Credit Counseling Corp.,* 440 F.Supp.2d 392, 420 (E.D.Pa. 2006).

It is undisputed that Plaintiffs entered into the leases with ECA and its predecessors in interest for the production of oil and gas on their land.  Therefore, the relationship between the parties is founded upon an express contract and any claim that ECA failed to pay the proper amount of royalties from gas production, failed to pay oil royalties, failed to pay for the use of Plaintiffs' land or failed to pay bonuses are all damages stemming from the leases and governed by contract law and not by equity.

Plaintiffs also respond to ECA's motion by adding another ground for unjust enrichment by claiming that "there is no lease agreement for the development of Plaintiffs' Marcellus Shale rights . . . [and i]t is the contention of the Plaintiffs that ECA had an obligation to enter into a separate lease agreement with the Plaintiffs for the development of their Marcellus Shale rights, which would have provided for bonus payments and the payment of royalties of at least 18 per cent." Br. in Op. to Mot. to Dismiss [ECF No. 22] at 7.  To the extent that Plaintiffs seek to add

this claim through its briefing, "it is improper to use an opposition to a motion to dismiss to amend a complaint[,]" and Plaintiffs may not do so here. *Knopick v. UBS Fin. Servs.*, Inc., --- F.Supp.3d ---, ---, Civ. A. No. 14-05639, 2015 WL 4931480, at *11 (E.D.Pa. Aug. 18, 2015) (citing *Pa. ex rel. Zimmerman v. PepsiCo*, 836 F.2d 173, 181 (3d Cir. 1988)). Even assuming that Plaintiffs properly pleaded this ground for unjust enrichment, this claim is properly within the realm of contract law and not equity, as it necessitates a discussion of contract interpretation and what the leases permitted and not a discussion of equitable principles. Accordingly, Plaintiffs claims for unjust enrichment are dismissed, as the relationship of the parties is founded upon an express contract.

### iii. Class Claims

As to ECA's argument that the claims previously dismissed in *Pollock* should be dismissed as a matter of law in the first instance here, those issues are presently on appeal. *Pollock v. Energy Corporation of America*, 15-2648; 15-2649 (3d Cir.). Specifically, ECA raises the following issues on appeal: (1) Whether the subclasses were properly certified; (2) whether plaintiffs' expert should have been permitted to testify; and (3) whether judgment as a matter of law or a new trial should have been granted to ECA due to the absence of sufficient evidence to support the jury verdict. *See Pollock*, 15-2648 (3d Cir.) [Doc. No. 003112025993 at 2]. Additionally, the class Plaintiffs raise the following issues on appeal: (1) whether the trial court committed reversible error in holding that the lessee under an oil and gas leave in Pennsylvania can deduct an allocated, not actual, amount of gas lost between the well and the point of sale when calculating natural gas royalties where no right to allocate is granted in the lease; (2) whether the trial court committed reversible error in holding that the lessee under an oil and gas lease in Pennsylvania can deduct an allocated, not actual, amount of post-production costs when

calculating natural gas royalties where no right to allocate is granted in the lease; and (3) whether the trial court committed reversible error in holding that the discovery rule does not enlarge the period of actionable damages for the underpayment of natural gas royalties where there is no information on the royalty check stubs or in the public domain that would place a reasonably prudent lessor on inquiry notice that the royalty payments were incorrect. *See Pollock*, 15-2649 (3d Cir.) [Doc. No. 003112023920 at 2].

Accordingly, because the claims raised here and the issues on appeal in the related class action are substantially similar, if not identical, the parties are ordered to show cause as to why this case should not be stayed pending the disposition of the appeal. The remainder of ECA's motion to dismiss is presently denied.

## IV. CONCLUSION

Based on the foregoing, Plaintiffs William J. Gottselig, Jr. and Arlene Gottselig's Motion to Remand to State Court [ECF No. 17] is denied and Defendant Energy Corporation of America's ("ECA") Partial Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 5] is granted in part and denied in part. Additionally, the parties are ordered to show cause as to why this case should not be stayed pending the disposition of the appeal in the related class action.

An appropriate Order follows.


Dated: October 5, 2015

By the Court,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc:     *Counsel for Plaintiffs*
        Frank D. Magone, Esquire
        Frank D. Magone Law Firm
        600 Park Avenue
        Suite D
        Monongahela, PA 15063

        *Counsel for Defendant*
        Kevin C. Abbott, Esquire
        Justin H. Werner, Esquire
        Stacey L. Jarrell, Esquire
        Reed Smith
        Reed Smith Centre
        225 Fifth Avenue
        Pittsburgh, PA 15222-2716

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

WILLIAM J. GOTTSELIG, JR. and  )
ARLENE GOTTSELIG,  )
        Plaintiffs,  )      Civil Action No. 15-971
          )
      v.  )      Magistrate Judge Robert C. Mitchell
          )
ENERGY CORPORATION OF AMERICA,)
        Defendant.  )

## O R D E R

AND NOW, this 5th day of October, 2015, it is HEREBY ORDERED the Plaintiffs William J. Gottselig, Jr. and Arlene Gottselig's Motion to Remand to State Court [ECF No. 17] is DENIED;

IT IS FURTHER ORDERED that Defendant Energy Corporation of America's ("ECA") Partial Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) [ECF No. 5] is GRANTED IN PART and DENIED IN PART;

IT IS FURTHER ORDERED that the parties are to show cause as to why this case should not be stayed pending the disposition of the appeal in the related class action. Responses to the Order to Show Cause due by **October 16, 2015**.

                                            By the Court,

                                            /s Robert C. Mitchell
                                            ROBERT C. MITCHELL
                                            United States Magistrate Judge